All right. Case number 13, K.R. 1117, People v. Rasheem Holloway. All right. Good morning. Counsel, who are going to present, would you please approach the podium and identify yourselves? Good morning. Cassidy Davis-Kileman for the Office of the State Appellate Defender, representing Mr. Rasheem Holloway. Good morning, Your Honor. Assistant State's Attorney John Nowak, representing the People. I will be arguing Issue 1. Co-Counsel will be arguing the remaining issues. Good morning, Your Honor. Assistant State's Attorney Christopher Sullivan, thank you. Your last name again? Sullivan, excuse me. Justice Reyes wants to know if you folks left anybody back to answer the phone in the office. New assistants? Yeah. Oh. All right. How many? All right. Well, we'll give them something to talk about. The State Appellate Defender's Office, but I know Counsel Superior could report. So, good morning. Good morning. Good morning. Ms. Kileman, before you begin, we would like to ask you to make sure in your discussion today to speak to at least two things. First, your position with regard to any infirmities that you see in the plea process. But also, we'd like you to speak to the underlying issue with regard to Aguilar. All right? Okay. If that's your marching orders, you can proceed. Okay. Thank you. May it please the Court, actually, before I begin, if you wouldn't mind, I do have a couple of preliminary matters. On December 10, 2014, I filed a motion to cite additional authority on the cases, people v. Jenkins and people v. Claxton. And I would like to know if it would be okay to discuss those today. Well, I think, didn't we allow that order? I think so, yeah. I believe we did. If not, I know Counsel for the State filed a response. So, we do have both of those here. And I believe that PJ would know better than I would. You know what? It doesn't look like, based on our fact sheet, that that was ruled on. So. Well, either way. We'll allow you to. We're all well familiar with the law. So, go ahead. Okay. Thank you. I appreciate that. And then the second preliminary matter I have is I also filed an appeal bond yesterday on December 15, 2014. And I would just like to ask, as part of the argument, that that be granted. So, thank you. Well, we'll deal with that as we see fit subsequent to the argument. Okay. I just wanted to alert the Court. Thank you. We're aware of it. And I'd also like to reserve some time for rebuttal, please. Five minutes. I'll be beginning with the Aguilar issue this morning. Your Honors, Mr. Holloway pled guilty to unlawful use or possession of a weapon by a felon. That offense requires that the State prove that the defendant be in possession of or use a gun and that the defendant be a felon in the State of Illinois or in any other jurisdiction. In this case, the prior offense used by the State to sustain Mr. Holloway's UUWF conviction was a Class IV aggravated unlawful use of a weapon conviction from 2012. The prior conviction required by the UUWF statute is an element of the offense and the State was required to prove Mr. Holloway's prior conviction beyond a reasonable doubt. Normally, though, this is a plea of guilty, isn't it? Yes, it is. This isn't really in the same procedural posture as any of the cases that have been decided by this Court in terms of the Aguilar situation. I know the Supreme Court has taken the PLA on McFadden. I think that was a jury trial, but there are numerous issues involved in that case. Fields, I believe, was a bench trial. Was Nicholas Claxton a plea of guilty? I believe, Your Honor, that that was a trial as well. I'm not sure. I think it was. I don't think we've had a case where an individual has entered a plea of guilty and the case is here on the denial of a motion to vacate a guilty plea. Normally, when you plead guilty, you're giving up certain rights. One of those primarily is the right to have the State prove you guilty beyond a reasonable doubt. Normally, that whole issue is waived when you enter a plea. You're saying, I'm giving up my right to have the elements. Granted, this case has a little bit of a different twist to it, but I just wanted to acknowledge that the procedural posture here is different than any of the other cases that we've seen. We would acknowledge that, but we believe that the case requires, even though the procedural posture is different, that it requires the same outcome as McFadden-Fields. Let me ask you about this predicate felony. I'm sorry. Why do you say that, though? Because the 2012 conviction is void ad omniscio, or as though it never existed, so it can't be criminal conduct. And in order to have the UUW buy a felon, one of the elements is to have that predicate offense. So we would be arguing that, basically based on the UUW from 2012, that because it's void ad omniscio, the current conviction can no longer stand. All right. But the basis of that is, isn't the basis of your claim that because the underlying felony is void ad omniscio, that therefore the state has failed in its burden to prove, beyond a reasonable doubt, the offense of UUW by felon because they can't prove an element? Is that the basis of your claim? That's how it was argued. And, again, basically the basis of your claim, I mean, to just kind of expand a little bit on what Justice McBride just alluded to, if that's the basis of your claim, if the basis of your claim is that the state can't prove or couldn't prove the defendant guilty beyond a reasonable doubt, and he pled guilty, doesn't he waive that? We would argue that. Doesn't he waive the argument that he couldn't be proven guilty beyond a reasonable doubt? We don't believe that he would waive that argument again because of the void ad omniscio doctrine. It's not criminal conduct any longer, and it's constitutionally protected. So, you know, even though he did plead guilty, it was based on the understanding that, one, yes, I was in use or possession of a weapon, and that, two, I was a prior felon before. Again, in the charging instrument, the state- Now, I'm going to go into the record on appeal. All right, now, we have the record for the 2012 conviction, and what we don't have is the common law record. I don't know whether he pled guilty, whether he was found guilty, or whether there was a jury trial. There's about, I think, five counts in the indictment. Now, three of them involve UUW without possessing a gun, without having a currently valid firearm owner's identification card. Now, that charge, as far as I know, is not constitutionally infirm. There's another charge in the indictment from 2012. That relates to not having a gun in a park. Now, I'm not sure whether that issue has ever been explored and whether or not the Second Amendment allows individuals to have guns in playgrounds, but there's certainly an argument to be made that we don't want guns in schools. So I'm not sure yet whether the Constitution protects individuals from going into parks with guns where children play and having this Second Amendment right to carry that gun whenever and wherever we please. But my point is that there are five charges in the previous indictment. You've given us the indictment and nothing more. Now, I don't know whether that predicate felony was the result of a plea where the state nollied the FOID charges, whether they nollied the park charges in exchange for a plea of guilty, or whether he was found guilty of everything in a bench trial and the court simply merged everything except the aggravated UUW. So I don't know, really, at this point, based on this record, whether that underlying predicate is infirm at all. I just know that he had multiple charges. But we don't have the common law record. It doesn't tell us whether he pled guilty, whether he had a jury, whether he had a bench, whether the state nollied charges in exchange. So I'm not sure we can just leap to where you're going today because you've given us a couple of charges. What do you say to that? Well, the first response I have to that is that while you make very good points, the state never argued that in their briefs. And, again, we would be stressing, based on the FOID ab initio doctrine, just like you don't have any proof of the other convictions, there's no proof the other way either, that the state did. There are some other charges that would satisfy the UUW by a felon element. But all the other cases, I think, would show that there was a plea of guilty to the infirm angular charge. But in this case, we really don't know that. I mean, not from this record. So I think there is a difference. I mean, I don't think the procedural posture is the same. And in Claxton, McFadden, Fields, and I think there's some other Rule 23s out there, this court said that we can't really ignore the predicate felony. But at the same time, we don't have the authority to go in, reach in, and vacate that and somehow say that that particular charge is FOID ab initio. Well, there's actually, in an unpublished decision, people be fostered. Which we can't really talk about. It would actually be a violation of the Supreme Court rules to talk about that because you just can't do that. So I'm aware there are multiple cases. Do you know how many cases there are pending with this very significant issue before the Illinois Supreme Court? When you say very significant issue, do you mean the same procedural posture? The AGLR, where we have defendants who have been found guilty of UUW by a felon, and the underlying felony is an AGLR felony. McFadden is pending before the Illinois Supreme Court. But, I mean, I don't know if there's PLA petitions pending on others. I'm not, unfortunately, sure of that. But, like I said, we don't think, even with a procedural posture, we just believe, again, that because of the FOID ab initio and because it's not criminal conduct, that based on that, we would have to vacate the UUW by a felon conviction in this case. But do you think this Court has authority on the record that you've given us to say that that underlying conviction is somehow infirm? That we can just simply say, well, we don't know what happened at that plea, do we? Again, the state never argued that in their brief, so I don't think that rules out the possibility entirely. But we do acknowledge that based on the record, there's no information as far as the specifics of the 2012, the previous felony. So what should we do about that? What would you ask us to do? Vacate the conviction and just let it go, or remand it for some purpose, figure it out, or what? Well, I think, given the infirmities and given the fact that Mr. Holloway did file a motion to vacate his plea, which leads me to the next issue that you asked me to address, I think a remand would be appropriate, and then that could be explored at this time. I'm not entirely comfortable, even though based on the acknowledgement, because, again, we don't know either way. That's the problem. I don't think this Court has the authority to simply recognize something about an indictment that we don't really know about. But on your motion to vacate the plea, your primary argument is that this plea didn't really have, well, there wasn't knowledge of what the actual sentence would be if he were to not agree with whatever he was supposed to do. Isn't that kind of what you're arguing? Yes, that is our exact argument. So essentially, we are arguing that Mr. Holloway was never advised of the full terms of his plea agreement on the record prior to the trial court's acceptance of the guilty plea. So in the trial court, there were multiple 402 conferences. The record is silent as to whether Mr. Holloway was even present at those 402 conferences. Was it there only one? No, the record indicates that there were multiple 402 conferences, and I believe defense counsel referred to that. If you can give me just a minute, I'll give you the page number. He requested a 402 conference on December 11, 2012. They initially spoke, starting on page C3, Your Honors, and then after that they asked for continuance, and then again the 402 conference was referred to. The understanding that came out of... Was there a conference that day? Yes, on pages C5 and C6, the court explained what the 402 conference was to Mr. Holloway, and then Mr. Holloway indicated that he did want to have the conference, and then there was a continuance by the court. So basically, the understanding that was discussed after the 402 conferences was that in exchange for his plea of guilty to unlawful use of a weapon by a felon, he would receive a sentence of boot camp if he swore under oath to facts alleged by the state. The trial court then accepted the plea of guilty. So prior to that acceptance, there was no indication that if he did not swear to the facts alleged by the state, that he would be then subject to a seven-year term of imprisonment, and that's a big difference between boot camp. On page C7, Mr. Holloway indicated he understood he would have to swear under oath to facts given to him by the state's attorney and may have to answer some questions. When you move on to page C15, defense counsel then says, well, I thought he complied because the factual basis of the 402 conference dealt with a statement that Mr. Holloway made after being arrested and after being Mirandized. The state didn't ask him any questions about that, and there was no indication that Mr. Holloway, you know, did he understand that he was just to testify truthfully and admit his own part? Was he to testify and finger someone for the state? Was he to testify and give them information about a specific co-defendant? That just doesn't come through on the record. We don't know either way. And 402B was designed to prevent exactly this type of misunderstanding that occurred in this case. There's just too much ambiguity on the record to say for sure whether Mr. Holloway knew, again, the full terms of the plea condition. If he testified truthfully and apparently gave information about Mr. Garcia, that he would, you know, receive a sentence of boot camp, and if he did not do that, that he would receive a seven-year sentence. All right. You do argue that normally, if you don't include this in your motion to vacate, the particular ground upon which you're seeking to vacate, it's waived. Your argument is that it's plain error, but then you argue alternatively that if it's not plain error, his lawyer was ineffective. Is that right? Yes, that is correct. We would be arguing this ties into 604D. There's no affirmative duty on the defendant to advise counsel of any problems. The language in 604D specifically states that counsel is required to make any amendments to the motion necessary for adequate presentation of any defects in those proceedings. Any defects in those proceedings, whether Mr. Holloway advised him or not, was the responsibility of defense counsel. And again, defense counsel stating on page C-15, well, I thought Mr. Holloway had complied, and based on the fact that apparently there had been discussions in 402 conferences, again, there's just too much ambiguity. We cannot be certain that Mr. Holloway was advised of the full terms of the plea agreement on the record as required by Rule 402B. Does the record disclose what boot camp is? I mean, everybody throws the words around. Some of us may have familiarity with that, but the record doesn't really disclose that it's four years, generally speaking, that it's a program in Cook County, and that, you know, what the obligations are versus the seven-year sentence that was actually imposed. Correct? That's correct. All right. But again, whether or not boot camp was explained to him, one sentence, whatever that may have been in one circumstance, and receive a completely different sentence in another circumstance, that's what needed to be explained to Mr. Holloway prior to the trial court's acceptance of his guilty plea, not after. He should have understood either boot camp or seven years, and he should have been advised specifically of what the state was expecting. Again, defense counsel said that he thought Mr. Holloway had complied, but complied to what? We just really don't know. Well, logically, though, I mean, the whole reason for the concept of swearing a defendant in while he's taking a plea and making him answer questions is to eliminate that person as a witness for the co-defendant who's still waiting for trial, isn't it? I mean, and so, you know, what good does it do the state to have the guy implicate himself and nobody else in the plea hearing? I mean, why would they even undertake that exercise if it wasn't for, you know, to have some impact on the co-defendant's situation? I mean, that's just kind of a logical criminal procedure kind of thing, isn't it? Well, my first response to that is, first, the state had the unbridled opportunity to question Mr. Holloway. So if there was something specific, and it's, again, defense counsel referred to the statement that he made after he had been Mirandized, then the state could have asked about that, and they did not. And then, you know, also to your criminal procedure point, in all guilty pleas, there are not necessarily co-defendants or someone else that could be involved. And, you know, when you plead guilty, that's accepting responsibility for actions that you say that you're taking. Mr. Holloway swore an oath to testify truthfully, and according to him, he did that by acknowledging his role in this offense. So if there was something specific that the state was hoping to get out of his testimony, and which very well may have been discussed in the 402 conference, which, again, we have no knowledge of because it was held off of the record, then they had the opportunity to either ask him that, to read the... I explained to the defendant the offer from the 402 conference, which is on count one of the charges before the court. I believe at this time the defendant wishes to change his plea from not guilty to guilty and accept the court's offer of Cook County Boot Camp. There is a necessary condition that defendants swear under oath to the facts given to him, read to him by the state's attorney, and he may also have to answer some questions as well. I mean, there is an indication that he has to do something in order for the offer of boot camp. But it's not specific enough. Counsel explained the offer, but why didn't he elaborate on what that offer was? And especially if Mr. Holloway was not at the 402 conferences, then defense counsel could have thought that the offer was one thing, when in fact it was something else. So again, we would argue that this is why Rule 402B requires that the specific plea agreement be stated on the record, not that defense counsel just say that he explained the offer. And again, in the part where he says that Mr. Holloway would have to swear under oath to facts given to him by the state's attorney and may have to answer some questions, again, that's very general, we would argue. So there needed to be more specificity, we would argue, under Rule 402. So briefly, I would just like to reiterate that under 402B, we believe that the plea agreement was not stated on the record, and because defense counsel did not address this infirmity under Rule 604D, this requires remand. I'll be reserving the remaining time for rebuttal if there are any further questions. Thank you, counsel. Thank you. May it please the Court. Again, Assistant State's Attorney John Nowak on behalf of the people. In September 2012, when this defendant possessed that gun, he was a twice convicted felon in possession of a firearm. Twice convicted? That's correct, Your Honor. He had been convicted in 2011 of possession of a controlled substance. Oh, that's right. You know what, the record doesn't really show us that. So, I mean, you could possibly glean from this record, as I recall, that actually on the 2012 conviction, he went to the penitentiary for a year, and normally you wouldn't go to the penitentiary for a year had you not been convicted earlier. But, Mr. Nowak, the record doesn't really tell us that, does it? It does not, Your Honor. So, I mean, we are kind of bound here by the record. Absolutely, Your Honor. The reason why it's not in the record. And there was no PSI in this case because he waived it. Precisely. He waived the PSI. I don't see how we can inquire into this and how you can tell us now these things that aren't in the record. It seems that it would be permissible. Is that fair? It's fair because it's permissible for this court to take judicial notice of a court record such as a previous conviction. Yeah, but we don't have that. We don't. And part of the reason it's not in the record is, again, because he waived the PSI, which is because he pled guilty in this case, waiving all non-jurisdictional issues. That's why this record doesn't have it in there. You could have supplemented the record. You could have asked to include, although I don't know that it was before the court at the time of the plea, this plea. But you could have supplemented the record that would have shown that this person has not only the felony related to 2012, but he has a gun conviction before that or some other felony conviction? No, a drug conviction. A drug conviction. Why is it relevant? It's relevant because it's relevant in part to this case and also to his appellate bond motion, which he filed yesterday and will be responding today. You'll respond to that. Yes. But why is the drug conviction relevant? That wasn't alleged as the underlying felony in the indictment, was it? It's relevant for two reasons. Number one, regardless of how McFadden is resolved in the Illinois Supreme Court, this defendant was a felon in possession of a gun based on that prior possession of a controlled substance. He was not exercising any constitutional right on that day. That goes to our earlier comments that we don't know from this record that there's anything wrong with the 2012 conviction. And that's true, Your Honor, because looking at the minimus, which again is the only, besides the indictment, all we have in this record as to what happened with the 2012, it appears on the minimus at the bottom that it doesn't say whether he pled guilty or not, but it does say that all other counts were not. So there certainly can be an implication that perhaps he did plead guilty in exchange for not laying the rest of the counts. We don't know. What we don't know is that just because someone says that a predicate felony is infirm, that that means it's infirm. And the court doesn't really have jurisdiction to go back in and reach now. So we're past that, I think. Yes, Your Honor. And again, this all comes down to the fact that this was a guilty plea. He admitted to every fact in this offense. He's waived every issue in this case besides non-jurisdictional issues. And it all boils down to that. There was nothing in the record about his PCS because, again, he pled guilty to the predicate of the aggravated UUW by felon. There's nothing. Well, we have to prove that he had been convicted of a felony in order to prove him guilty by UUW by felon. And we put in the indictment that that prior felony was this 2012 aggravated UUW by felon. We could certainly prove it in a different way. We could prove it that he had also been convicted of this PCS. But you know that the 2012 conviction is not based on a prior felony. It is not, Your Honor. And once again, you're injecting things in the record that aren't in the record. There is no suggestion in the record that was supplied by Mr. Holloway that when the state charged him in 2012 that they charged him with UUW. They only charged him with aggravated unlawful use of a weapon that was not based on a prior conviction. And, again, Your Honor, this, again, the confusion here stems from this being a guilty plea. But looking at the Department of Corrections' website just this morning to see his previous felonies, it appears that he was sentenced for both that 2011 possession of a controlled substance on the same date as that 2012 aggravated UUW. That is perhaps why he had not yet been convicted of PCS at the time of that 2012. And that's why we did not charge him with being a felon because he had not been a felon at that point. But starting from that point, he has been. Well, let's talk about the Aguilar and how you believe all these cases have been wrongly decided. Nicholas Claxton, Ben, Mr. Fields, a number of other Rule 23s which we are not allowed to go into. In those cases, which are procedurally different than this, there is an argument that can be made that there's something basically unfair about holding someone in the penitentiary or conduct that the Illinois Supreme Court has said is constitutionally protected. Again, Your Honor, this gets into the merits of the argument we're making before the Illinois Supreme Court and the defendant that we made before this court. That is, it's the defendant's status as a felon on the date that he possesses it regardless of that. In that argument, which is clearly one of the issues on appeal, how do you respond to you rely on these 11 federal circuits that have all stated or held that it's the status at the time. But is there a single federal case that you can cite where any of those courts had an Illinois rule regarding void ab initio and where the conduct that was relevant to that person's status had subsequently been held to be constitutionally protected conduct? As to Illinois statute, none of those federal circuits dealt with Illinois convictions. Right. But beginning with Lewis in the United States Supreme Court, that had to do with a constitutionally infirm predicate conviction. That defendant had been convicted without counsel. Yeah. And it would be void ab initio. I think you're understanding my question. You're saying avoid ab initio. Has there been? No, there's nothing specific on Illinois. Has there ever been a case, a federal case that you rely on, that you've relied on in your briefs that in any way, shape, or form holds that because the conduct that was the basis of the conviction was constitutionally protected, that that person should still be held accountable for that subsequent possession of a firearm? There are none as to Second Amendment rights. But again, Your Honors, procedurally, it's no different than in, say, that Ninth Circuit case where the court, where the underlying conviction had been declared, had been vacated and void ab initio and non-protunct. They vacated it non-protunct as if, dating back to the date of that predicate conviction, as if it never occurred. Why didn't the state ever appeal? And I mean the state in terms of all the officers of the state. Why didn't the state appeal? Either Moore, Seventh Circuit Court of Appeals decision that opened the door, and Aguilar. It's a policy decision that the state's attorney and attorney general... You're arguing how wrong, basically, Aguilar is. And yet no one ever took an appeal. Your Honor, assuming that Aguilar is correct. It doesn't matter as to his status as a felon. It doesn't necessarily follow that Aguilar and Moore are wrong in order for you to get around this void ab initio thing. They're two different things. Aguilar just said that you can have a gun on the street. And that's what Moore said. But the question here is, if you have a status, if you have the status that you're a felon, even though that conviction is void, when you're walking around, your status is that you're a felon. So you can't have a gun. They're not exclusive. Right, they're not exclusive. Knowing that... I mean, now you're really just making an argument in front of us that we're bound not to accept because you're making... I mean, our hands are tied, but with regard to that issue, the status issue is before the Supreme Court. It is. The status issue is before the Illinois Supreme Court. And again, Your Honors, it is his status that day. It's not as if, after Aguilar was decided, the IDOC let every person who was in prison on a Class 4 AAUW out of prison. I mean, and similarly, not every person who had previously been convicted of that Class 4 AAUW doesn't suddenly the next day get to possess a gun on the street. They also have that conviction they came before that point. Let me, because you have all these spectators here, let me throw you a little curveball. You know, we went around about the fact that this is a plea of guilty, and he waived this argument about whether he could be proven guilty beyond a reasonable doubt. He waived defects and all that stuff. At the time that Mr. Holloway pled guilty, do you think that he knew that his underlying felony was void ebonitio? Absolutely not, Your Honor. Okay, and so when you enter a plea of guilty, doesn't that plea of guilty have to be knowingly, and intelligently made? And don't you have to have an idea of what the evidence is that the state can use against you? Yes, Your Honor. And can't the argument be made that there's no way for Mr. Holloway to have understood the evidence that was marshaled against him if he didn't understand that his underlying felony couldn't be used against him? Your Honor, he knew he was a convicted felon on that day. He was a close convicted felon on that day. Yeah, and that goes to the answer to your question, is he fully knew well. He knew. I was a felon on September 24, 2012 when I possessed that weapon, and he knew it when he pled guilty in 2013. He knew I was a felon on that date in September 2012 when I had that gun. I had the status of a felon. I should not. I was prohibited by law of possessing a firearm, and I did it, Your Honors, and I plead guilty to it, and that's what he did in this case, Your Honor. You can catch a curveball. Following on Justice McBride's question, the opposing counsel as to how many petitions for leave to appeal are pending. Having written every single one of them, there are nine pending, Your Honor. And the brief that's due on McFadden, is McFadden the first one? That is the one that the Supreme Court granted. They are holding the other ones.  We filed our brief in McFadden on October 8th. The brief is due on September 17th for the opposing side. Tomorrow. Tomorrow, yes. McFadden's brief is due tomorrow on December 17th. There is the possibility, of course, when this Court decided McFadden, it ruled against the State on the UUW by a felon issue, but it went on and affirmed his conviction, his sentence. He's in custody. He's in custody. And so there is a possibility that he may raise, seek cross-relief on that sentencing issue. But his brief is due tomorrow on this case. But there were multiple issues there. There were multiple issues. Were there issues that the gun that was used to rob two different people, that the Court vacated the separate UUW convictions when they involved separate victims? They did, Your Honor, yes. Well, that's one of the issues that you have appealed. There is a constant. It was essentially a crime spree in that case. And there were three sets of victims and convictions on two. And the appellate court in McFadden vacated one of those UUW by a felon convictions based on one act, one crime. But one of the issues is certainly this issue. Absolutely, Your Honors. So to sum up on this first issue, he was a convicted felon on the date. He knew it when he pled guilty. And by pleading guilty, he waived all jurisdictional issues. For those reasons, we ask that this Court affirm on that basis. I'll leave it to my co-counsel, ASA Chris Sullivan, to address the plea issues. Thank you, Your Honors. Have you argued here before, Mr. Sullivan? I have not, Justice O'Brien. All right. Well, I'm sure Justice Palmer wants to welcome you. Mr. Sullivan, you're very welcome. My pleasure to be here, Your Honor. May it please the Court once again, Assistant State's Attorney Christopher Sullivan, appearing on behalf of the people of the State of Illinois. Defendant asked this Court to remand his case because the trial court neglected to state the complete terms of his plea agreement in open court. Yet remand is not warranted in this case because defendant cannot bear his burden to show prejudice. Well, let me ask you this. If you thought you were going to get four years boot camp, stay in the county, but you ended up getting seven in the penitentiary, and you weren't told that to begin with, do you think there's prejudice there and you end up with seven instead of four? If I weren't told that to begin with, yes, I would acknowledge that there was prejudice. But defendant bears a burden in this case to show that prejudice. All right. Well, where did the Court ever tell him, or did anybody ever tell him, before he entered his plea of guilty that, number one, we'll give you four years boot camp if you agree that the co-defendant actually threw the gun to you in the car and that you admit under oath that that was indeed the case? But if you don't do that, the agreement is that we're going to give you seven in the penitentiary. Where is that in the record before the Court ever accepted a guilty plea in this case? Those statements were never made in open court on the record before a defendant pled guilty. They were not ever made. We acknowledge that from the get-go. All right. But, to be fair, Judge Brown, during his preliminary 402 admonishments, when he explains to the defendant what a 402 conference is, that he can't change judges, he specifically says, there's going to be a 402 conference, your defense lawyer will be there, I'll make an offer at that 402 conference, I'll convey that offer to your defense lawyer, and your defense lawyer will convey it to you. The defendant said, he said, I understand. He acknowledged this fact. Afterwards, after the 402 conference, at which the defendant pleads guilty and then proceeds to testify, he does not testify that the gun in question belonged to his co-defendant. The state says, judge, the judge immediately stops the state's direct examination of him, calls for cross, defense counsel declines the cross-examination. At that point, for the first time on the record, Judge Brown does state that the complete terms of the plea included 70 years IDOC. Does the rule say that you can do it any time or however well you decide, or does it say, before accepting a guilty plea, the court shall personally address the defendant and indicate whether there's a plea agreement or if there's no agreement? Does the rule say that? The rule calls for it before the plea, yes, Justice Breyer, but the rule also calls for substantial and not literal compliance. And multiple appellate courts and the Illinois Supreme Court have held that even in cases where the complete terms of the plea were not stated in open court, a trial court can still substantially comply with that rule so long as the defendant was not prejudiced. Right. That's the difference. The cases that you cited say that, but there isn't one case in there where before taking the plea, he was promised one thing, and then after the plea, he got three years more or a different sentence. I mean, that's the fact. Those cases, so if you have a case like this one, where it's on the record we're going to give you four, if you answer questions and you swear to certain facts, and then later when the parties dispute whether he complied, that individual got more time. There's not a single case. There's no case specifically on point. I'll acknowledge that. But all these cases call for a defendant to show prejudice. And in this case, defendant cannot meet that burden because there are multiple instances where defendant never once raises the issue of being ignorant of the terms of his plea. Before sentencing, Judge Brown, when he finally says  Judge Brown says to the defendant, Do you have anything to say in light of that? The defendant says the gun was mine. Did you have anything else to say? He said the gun was mine. Anything else to say? The gun was mine. After the very first time that the judge stated the complete terms of the plea in open court, defendant never once complained about it. The day after. Wait a minute. Oh, you mean he didn't complain the day he got the seven? He didn't say, I didn't know I was getting seven. He never once did. He called his defense counsel the next day from Cook County Jail. The only grievance he raised with his plea was that he felt threatened by his co-defendant. One month after pleading guilty in sentencing, defense counsel appears in open court with defendant at his side and defense counsel acknowledges that the complete terms of the plea included seven years out of his seat. That's what was agreed to at the 402 counsel. Do you think if you would compare four to seven that you would say those are the same and there's no prejudice? I would not say they're the same, but I would argue Isn't that obvious prejudice on the record? It's not prejudice where a defendant can't meet the burden to show that defendant did not know he was getting seven if he did not testify. And there's two separate occasions where defense counsel acknowledges the seven years were agreed to in the plea conference. Defendant doesn't point that out. Why did the state say on the record after there was this dispute about the defense lawyer argued, well, the state said we don't think he kept up his part of the bargain. And then the defense attorney says, well, Judge, we think he substantially complied because he answered all the questions. And then the state says, well, the judge says, what do you think the sentence should be? And the state says, well, Judge, we want something that wasn't part of the conference. Are you aware of that line? Specifically, Justice McGrath, they call for IDOC pen time. I acknowledge they don't state the exact seven years amount. They say that's something other than what was discussed in the conference. What does that say to you? My understanding, Justice McGrath, is they specifically call for IDOC pen time, and it's IDOC pen time that was agreed to at the 402 conference. Well, why did they say then they were asking for something that wasn't agreed to at the conference? Does that tell us anything? My understanding of the record, Your Honor, is that all they call for is IDOC pen time. So at that point, they're merely reflecting what was agreed to during the 402 conference. In regards to defense counsel's answer to that, defense counsel has a duty to argue only with a good faith basis. And he acknowledges later that he knew the terms of the plea were seven years IDOC. So his answer is the best he can give to a client who did not live up to the terms of the plea that he agreed to. In a month after the defendant first appeared in the trial court, after sentencing, defense counsel files a 604-D certificate and an accompanying affidavit signed by a defendant. The only complaint the defendant listed in that affidavit that he personally signed says that he did not accept the more lenient terms of the plea because he felt threatened. The fact that he only argues for the person that he felt threatened but never once argues that he did not understand the terms of the plea can lead this court to conclude that the defendant can't meet his burden to show that he was prejudiced, that he was ignorant. Well, they argue that alternatively the lawyer was ineffective because the client got seven years when he thought he was getting boot camp. So their alternative argument, which we really haven't discussed at length, is basically, well, he should have complained. He should have put this in the motion to vacate, that my client got seven when he was told he was really only going to get four years' boot camp. The defendant's brief doesn't specifically claim ineffective assistance counsel. It does argue that defense counsel did not live up to his obligations under 604-D. Yes. But defense offers no basis whatsoever to say he didn't live up to 604-D. Nothing suggests that defense counsel did not review the reported proceedings. The fact of the matter remains that without any evidence to suggest that the defendant did not live up to the 604-D requirement, the defendant has no basis to argue that he erred. And again, defense counsel is bound to make good faith representations in that motion to vacate his guilty plea, his client's guilty plea. And the fact that it didn't suggest that the terms of the plea, the complete terms of the plea were laid out in that 4-2 conference and explained to his client. And defendant cannot meet his burden to show otherwise. In sum, the record is replete with multiple instances where defendant never once complains about the terms of the plea, where defense counsel acknowledges the terms of the plea included seven years' IDOC, where defendant says he understood that defense counsel would convey that plea to him and does nothing to suggest otherwise. Well, you know, it's problematic when the court doesn't really follow the rules. And, you know, we wouldn't be here if there had been this discussion before the acceptance of the guilty plea if the court had. And it's the court's job. It's not the state's attorney's office. It's not the defense attorney's obligation to recap an agreement. It's clearly the judge's responsibility to accept a plea after the full terms of that agreement are placed on the record. It's for everybody's benefit, including us now, to know that when he entered the plea that he was fully aware that if he didn't do exactly what he was supposed to do, that he was facing seven. It shouldn't come after the fact. That's not what the rule envisions. And I just think there's a problem with this plea because the judge didn't do what the rule says. I don't think there was substantial compliance when he didn't flush out the agreement. There absolutely is a problem with this plea, Justice Breyer. We'll acknowledge that. Yeah. But the rule does not require literal compliance. It requires substantial compliance. I agree. And I don't know how something is voluntary or knowing and intelligent if beforehand you don't have something on the record that says it's for if you do everything we want, that is, implicate the co-defendant. And if you refuse and if you don't answer the questions to our liking, then you are subject to seven years in the penitentiary. That's the agreement. That's what should have been placed on the record by the judge. He was supposed to inquire. He was supposed to ask the defendant. It wasn't the state's obligation, and it wasn't the defense attorney's obligation. But the judge does have an obligation. And the judge may not have lived up to his obligation here, but even if it did not amount to substantial compliance, it can still amount to harmless error. And defendant, again, bears a burden to show that he was prejudiced by this error. You know what I think is somewhat interesting is the timing of when this plea is actually over. And the judge asks the defendant if he wants to plead guilty. And he says, I want to plead guilty. And then he goes through all the admonitions about all the rights that he's waiving in order to plead guilty, and he says he understands that. But he still hasn't accepted the plea and entered the plea of guilty before the time that they have this session where he's sworn in and asked questions about what happened on the day of the offense. And so he testifies the way he testifies. That plea is still open, in my opinion, and the judge hasn't accepted the plea. And he testifies contrary to what the judge heard in the 402 conference. The judge now knows that he's gone the wrong way on this, at least according to the state. And after all that testimony, it isn't until after all that testimony that the judge says, okay, you know, I think you've been fully advised of your rights and the possible penalties, and I now, this is on C-14, I will accept your plea of guilty. There will be a fine and a guilty if the judge was entered. Before the judge, this is after the testimony in which he refuses to implicate the co-defendant, contrary to what the judge is told in the 402 conference. The judge knows at this point, this is going towards the penitentiary and away from the boot camp. Don't you think it's incumbent upon the judge before he accepts the plea and enters the finding of guilty and the judgment of guilty to say, well, you know, you're not saying what the state expected you to say. If you plead guilty, you're getting seven. You still want to plead guilty? I mean, don't you think that's what he should have done? I know you're going to say yes, but, you know. I think the fact that it remains just Palmer, turning back to page C-8, defendant enters a plea of guilty before that point. So at this point, defendant has already pled guilty, accepted that plea. My point is, I understand, my point is the judge hasn't accepted the plea yet. So he hasn't been convicted. I mean, well, he hasn't been sentenced, so he hasn't been convicted. But he hasn't, the judge hasn't entered the plea. It's out there. They're working on it. They're going through the admonitions, you know. And then he goes, I find that you're, you know, he blows the testimony. And then the judge goes, I find that you've been fully advised, and now I'm going to accept your plea. Yeah, you know, I'm just wondering maybe Judge Brown should have said, okay. Based on what you said, because he's got to be advised. When Judge Brown says, you've been advised, based on what he just said, I'm wondering maybe Judge Brown's got to say, if you persist in your plea of guilty, you're getting subbed. It's supposed to be an agreed plea. It's not an open plea. I think Judge Brown is looking at a defendant who's already pled guilty and has buyer's remorse. He said he would testify consistent with certain representations made at the 402 conference. Those representations were consistent with what is before this appellate court in the common law record in a police report, saying that a police officer observed the co-defendants holding a gun. A police officer observed the co-defendant pass the gun to a defendant. A defendant fled the car once the vehicle was curbed. And defendants specifically said, it wasn't my gun. Mr. Garcia, the co-defendant, handed it to him. Well, did this sort of become like an open, a blind plea? That all bets are off? You know, there's no deal now? You didn't do what they wanted you to do? I'll acknowledge it's an unorthodox plea. It's an either or. The offer from the 402 conference is boot camp if you testify consistent with those statements that the officers would testify you made, or it's seven years IDOC if you want to walk. And this case right here, right now. It's substantial compliance in this case because he knew about it. Where a defendant bears the burden to show he didn't know, I think all this evidence points to the fact that he did. Never complains about the plea. Signs the affidavit not complaining about the plea. Defense counsel acknowledges that these were, in fact, the terms of the plea. Absent anything to the contrary. Well, no. The defense attorney said that he believed his client substantially complied with the terms. There was a debate about that. That statement occurs. And then the state says, you know what, judge, we're asking for something other than what was discussed in the conference. The defense counsel statement there occurs after the defendant testified but before sentencing. And at that point. And you know, this defendant, according to the lawyer, he called him within 24 hours. He said, I made a mistake. I made a mistake. Okay. So he makes a mistake in that he didn't admit apparently everything that the state wanted him to admit on the record. Then he comes back to vacate the plea. He apologizes profusely and says he's made a mockery of the court. And he's willing, ready, and able to agree to whatever it is that the state wanted at the time of the plea. I think the fact that he acknowledges he made a mistake shows he knew the terms of the plea. No, I think he knows the terms that what he should have done was not, you know, dance around whether someone else gave him the gun. But, you know, if you read the record, it was pretty vague about what he was supposed to do. I mean, I just think all these things should be done beforehand. It was kind of vague as to what he was going to get if he didn't do whatever it was that he was supposed to do. You know what I think is really a problem, and this has nothing to do with you, but I mean, you know, they did something here that I think is a bad practice, and it may have headed this all off. And that is that based on the court's question, they agreed to stipulate the facts as discussed in the 402 conference. And that's just not a good practice. You know, the facts should be out in open court, on the record, so that the defendant, and it's happened many times, the defendant could say, no, that's not what happened. Or, yeah, that's what happened. So that's just a bad practice. Your Honor, an orthodox practice, yes. A bad practice, yes. But a prejudice defendant, no. Well, that's, I just can't, I can't see you looking me straight in the face and saying four is seven. Seven is four. Boot camp is seven at the IDOC. IDOC seven is the same as four years at the county doing boot camp every day. To me, they are not equal. So there's your prejudice. I don't see how anyone can say that four is seven and seven is four, therefore no prejudice. They're not equal. They're not. On the other hand, you know, right after this, right after this, when this all occurs, defense counsel says out loud right in front of the defendant, the offer from the court was this, four or seven. Right? Doesn't he say that? Your Honor, speaking referring to the day of the pleading and the sentencing? The sentencing. You know, after this all goes wrong, doesn't defense counsel say that? You know, when he's trying to convince the court that, you know, his testimony wasn't really off base, you know, doesn't he say something like, you know, the offer was, you know, one or the other? And at that time the defendant never said it to you. You never told me that. Right? Judge Brown says the offer is seven years. Defense counsel simply doesn't respond. That's later. I think Judge Palmer is correct. At the hearing on the motion to vacate. I'm sorry, the motion to vacate. I believe that counsel for the defendant summarizes the agreement post-agreement time. The motion to vacate. This is defense counsel. The court offered Mr. Holloway two options basically. The court offered Mr. Holloway if he agreed to swear to the facts as stated by the Cook County State's Attorney, Cook County Boot Camp, if he did not swear to the facts, offer was seven years I.D.O.C. And counsel says that during the motion to vacate and, you know, the defendant doesn't say it. Well, you never told me that. And that's the second time defense counsel stated that. There was a court appearance one month after the defendant pled guilty of a sentence. Defense counsel had not filed a six-court distribution. Judge Brown says come back when you've filed one. But at that court appearance, defense counsel says essentially the same thing. It was boot camp if he testified consistent with those representations. It was seven years I.D.O.C. if he did not. Defendant didn't correct his lawyer at that point. Defendant didn't contact his lawyer for the month or one month in between and say otherwise, yet had ample opportunity to do so. And that should lead this court to conclude either that defendant knew the terms of the plea or that defendant cannot meet his burden to show that he does not know the terms of the plea. The record is replete with instances time and time again where, yes, I acknowledge after the pleading of guilty, but statements are made by defense counsel, by defendant himself, and by the trial judge making clear that these were the terms of the plea. Defendant doesn't correct that in his affidavit. He doesn't correct that on the two times he personally addressed the trial court. His defense counsel does not correct that fact. This can lead the court to conclude that defendant knew the terms of the plea and was not prejudiced by this error. As I said, did you have fun in your first night? Absolutely. You know what? Now that I look at this, I think it was actually the state's attorney who was confirming the plea agreement because there was a lawyer who stepped up and said he says he thought his partner was maybe either way. All right, Mr. Sullivan, do you want to wrap up? Thank you, Your Honor. In sum, defendant cannot meet his burden to show that he was prejudiced by this error. Time and time again, representations are made by defense counsel, by defendant itself, and the trial judge making clear what the terms of the plea were. Defendant provides nothing in the record to challenge that fact. As such, this court should conclude that defendant was not prejudiced by this error. For these reasons and the reasons argued in our brief, we ask this court to affirm defendant's conviction. Thank you. Thank you, counsel. Thank you. Ms. Cowlin, did you? Your Honors, I just have several brief points that I'd like to address. First, I'd just like to point out that, again, the 2011 felony that Mr. Holloway is alleged to have, no evidence of that in the record. It's irrelevant. It was not in the indictment. Mr. Holloway did not have notice. No, but do you expect us to simply gather from the record something different than what we have? No. I'd just like to acknowledge. And wouldn't you acknowledge that you usually don't get one year in the penitentiary on a UUW first offender? At least that's kind of usually a probationary offense, and the law actually allows that. Of course, now we have this whole discussion about. Even if that is the usual offense, the point is that at this point it's too late. The argument was not made in the briefs. And, again, there was no reference or notice to Mr. Holloway in the indictment. The second point I'd like to make as far as the Aguilar briefly is the fact that there is a Seventh Circuit recent case again cited in the motion to state additional authority. People v. Jenkins. It actually recognized the Boyd-Abam-Nishio doctrine based on Aguilar. So I would just like to point that case out. Moving on to the 402. I'm sorry. What case is that? That's People v. Jenkins. Jenkins? Okay, thank you. Yes. So as far as the 402B issue, the state referred to buyer's remorse. But how can you have buyer's remorse if you don't know what you're buying? In this case, they repeatedly acknowledged that the statements, the specifics, were never made on the record. And the fact that there's multiple references, well, defense counsel said this at a later date, at the motion to vacate, at all these other hearings. Well, of course defense counsel mentioned it. The court cleared it up after the plea had been accepted. But, again, 402B requires that the plea be stated in its entirety on the record. That did not occur in this case. And as far as prejudice, Mr. Holloway would agree with the court that the difference between four and seven years is a great difference. It's not as if we're saying, well, Mr. Holloway was told that he would get four years and got four years in a day. It's a substantial difference. And the case, People v. Ridley, that Mr. Holloway cited in his briefs, discusses the fact that it is per se reversible error when the trial court fails to state the terms of the plea agreement on the record in open court. Wasn't Ridley somewhat diminished in its significance later and didn't the state point that out in their brief? You cited Ridley. It's a 1975 case. Don't they point out that Ridley has been somewhat abrogated perhaps or not? Am I misstating what they said? I believe for that issue as far as the state actually relied on several other cases, which were all distinguished by Mr. Holloway, People v. Dougherty, Thurston, Chavez. And again, we would argue that Dudley was also another case that they cited. But again, all of the cases are distinguishable because there was no compliance with Rule 402B's mandate. And even if we agree that only substantial compliance is required, that didn't occur in this case. In their brief, this is what they said. Three years after Ridley, the First District Court of Appeals rejected Ridley's holding that the failure to state the terms of a plea agreement is per se reversible error. And then what I pointed out to them was that there really weren't any cases where you had the suggestion that the defendant was offered a certain time and then the defendant was complaining on appeal, that he got something he wasn't offered. That's what makes this case a little different. But Ridley has been rejected for this position that the failure to not describe the terms is automatically per se reversible. Even in that case, again, we would argue that if substantial compliance is the rule with 402B, that did not occur in this case. Mr. Holloway was not advised of what he actually was agreeing to until the court specifically said it following the testimony. And again, that ties in with 604D. In the state's arguments, they place a lot of responsibility on Mr. Holloway. Well, he never mentioned that, you know, he was dissatisfied for this reason. He never alerted defense counsel immediately when he could have. But 604D requires strict compliance. And again, there's not an affirmative burden placed on Mr. Holloway to point out what he sees as any defects. 604D requires defense counsel to state anything, any errors that may have occurred in the record so that they can give the trial court the opportunity to correct those errors at that time. This was a glaring error, and it was not listed in 604D. So for these reasons, we would argue that in this case, Mr. Holloway's UWF conviction should be reversed based on the noncompliance with 402B and remanded for the chance to plead anew. You mean vacated? Yes. And remanded for what? The chance to plead anew. In the event, even though 604D does require strict compliance, in the interest of judicial economy, based on the problems with the admonishments, we would argue that granting relief on that issue would be the best course of action in this case. As opposed to some outright reversal because of this previous conviction that we're really not sure of. Yes, based on the fact of the record. I believe your stronger position is that the plea admonishments were wholly defective and that the court should have vacated the guilty plea and at least given him an opportunity to plead guilty to seven years if that was really the deal. Yes. Based on the fact that this court pointed out with the record, the state did refer to the DOC and we actually checked the clerk's computer which indicated that the other counts in the 2012 case had been mollied, but again it's not an official part of the record so we would believe that the best course of action would be relief on the 402B issue. Well, if we were to remand the case and if we were to remand it with instructions, would you also be asking us to instruct the court to delve into that issue as to the Aguilar issue? Yes, based on the fact that we believe it would need some looking into, yes. Because as I argued during my opening, while we don't know what the other offenses were, there's really no way to tell. What was Mr. Holloway's custodial status on the date of the plea? Thank you.